**CREDIT REPORTING BUREAU, INC., Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES, INC., et al., Defendants.**

**Civ. A. No. 73–155.**

United States District Court,
S. D. Ohio, E. D.

Sept. 16, 1974.

Irving I. Saul, Dayton, Ohio, Edward F. Pelteson, Columbus, Ohio, for plaintiff.

James P. Kennedy, Michael J. Canter, Columbus, Ohio, Powell McHenry, John Beatty, Cincinnati, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This matter is before the Court on the respective motions for summary judgment filed by the two defendants, Credit Bureau of Columbus and Federated Department Stores. Upon consideration of the pleadings, memoranda, depositions, affidavits and exhibits submitted by each of the parties, and oral argument had on the motions, this Court finds that defendants' motions should be denied.[1]

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the Court to enter summary judgment

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Implicit in this rule is the idea that there can be no blanket principle which automatically dictates when summary judgment should or should not be entered. Rather, as the Supreme Court noted in First Nat'l Bank v. Cities Service, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968), "whether summary judgment is appropriate in any case is one to be decided upon the

---

1. Evidence was presented that F & R Lazarus Co. is merely a holding company and has been erroneously joined. Plaintiff does not contest this assertion. Therefore it is hereby dismissed from this action. Federated which operates department stores in Franklin County under the name "Lazarus" remains a party.

particular facts of that case . . . ." This being so, I shall state the facts which are not in dispute in this case briefly, developing them more fully as I discuss the specific legal issues raised.

Plaintiff Credit Reporting Bureau (hereinafter "CRB" or "Plaintiff") is a credit reporting agency which is in the business of preparing and selling retail consumer credit reports on individuals in Franklin County, Ohio. Defendant, Credit Bureau of Columbus (hereinafter "CBC") is also a credit agency which assembles and sells information on the credit worthiness of Franklin County, consumers. Defendant Federated Department Stores (hereinafter "Federated") operates a chain of retail department stores throughout various parts of the United States. In Franklin County, Ohio, its department stores trade under the name "Lazarus." Lazarus allegedly is the dominant and leading department store in the Columbus area. Because of this alleged dominance it is said by plaintiff to be substantially involved in the granting of consumer credit and in the supplying of consumer credit information into the interstate system of consumer credit reporting.

This interstate system of credit reporting consists of national credit agencies which have local franchises throughout the country. These franchises determine the credit worthiness of local consumers both for area business and for national credit grantors such as oil companies and national credit card companies. The national credit grantors refer applications for credit cards to a national credit bureau which in turn forwards them to its various affiliated branches which service the area where the particular applicant lives. Defendant CBC is a member of Associated Credit Bureaus of America (hereinafter "ACB of A") while plaintiff is affiliated with a competing agency, Credit Bureau Reports, Inc.

Plaintiff brings this action under the Sherman Act, 15 U.S.C. Sections 1 and 2 (1970), claiming that defendant CBC has monopolized the credit reporting business in Franklin County and that the defendants have combined to monopolize and restrain trade in the credit reporting business in Franklin County. Specifically, plaintiff alleges that because CBC is the sole credit reporting bureau which is permitted access to raw consumer credit data by Lazarus and the other original defendants to this action [2] it is thereby given a monopoly in the credit reporting business in Franklin County and in the interchange role that Franklin County occupies in the national consumer credit reporting system. According to plaintiff, access to Lazarus' raw consumer credit information is crucial if plaintiff is to be able to compete as an effective part of consumer credit reporting in Franklin County and in the national interchange system. Without it, CRB says it is precluded from competing with defendant CBC. Defendants, on the other hand, while conceding that Lazarus provides its raw credit information exclusively to CBC, contend that such an arrangement was a Lazarus management decision "made for its own business reasons, independently, unilaterally, and without reference to or knowledge of what any other party's position might be." As set forth in an affidavit of Mr. C. William Carleson, Assistant to the Vice President of Finance of the Lazarus Division of Federated Department Stores, Inc., this decision was reached upon a consideration of the following factors:

1. A concern for the confidentiality and importance of these records, both as to the conduct of Federated's Lazarus Division business and as to its customers' rights of privacy;

---

2. Also named as defendants in this suit were City National Bank & Trust Co. and Buckeye Federal Savings and Loan Association.

City National was subsequently dismissed with prejudice while Buckeye's dismissal was without prejudice.

2. The inconvenience and expense of duplicating these rather voluminous records, coupled with the fact that it has no desire to deal with a second credit bureau, which would unavoidably entail an additional inconvenience and burden to Lazarus;

3. A lack of knowledge as to the integrity and reliability of the plaintiff, which at that time had no established reputation or operating experience at all; and

4. ·The complete lack of any discernible obligation to provide these records to the plaintiff, and a corresponding lack of any apparent right on plaintiff's part to demand access to them.

 Assuming for the moment that Lazarus' decision was unilaterally made it is still necessary for this Court to consider how the contract between CBC and Federated is implemented. The standard contract used by CBC provides that credit grantors who buy the services of CBC will also agree to furnish information on their customer accounts to CBC, who then utilizes this information in preparing its consumer credit reports. Usually a credit grantor such as Lazarus would furnish the credit information by phone or mail in response to a CBC inquiry about a particular consumer. Because of the large number of inquiries to ·Lazarus from CBC, Lazarus decided to provide CBC with a computer print-out of all its customer accounts. By agreement between the two parties the print-outs are loaned to CBC on a month-to-month basis; an up-to-date print-out is supplied by Lazarus at the beginning of each month, at which time the past month's print-out is returned to Lazarus. Contrary to CBC's normal practice of integrating the raw credit data received from credit grantors into CBC's files, it does not incorporate the Lazarus print-outs into its own records. Presumably, then, the credit information on these print-outs—because they do not become part of CBC's

own files but remain the property of Lazarus—is removed from the terms of the consent decree entered into by ACB of A in the United States District Court for the Eastern District of Missouri, a consent order which by its terms binds CBC as a member bureau of ACB of A. United States v. National Retail Credit Association, 1953 C.C.H. Trade Cases, Para. 67, 608 (1953). In relevant part the consent decree provides that:

(A) Credit bureau members of ACB of A (Associated Credit Bureaus of America) are ordered and directed to furnish consumer credit reports and consumer credit information upon request to any reputable non-member credit bureau on such reasonable terms and conditions as they may individually choose without discrimination in coverage and speed of service as between member bureaus of ACB of A and non-member bureaus.

(B) In the furnishing of consumer credit information or consumer credit reports to any reputable non-member credit bureau, credit bureau members of ACB of A are enjoined and restrained from

(1) Imposing any condition or requirement as to the confidentiality of the contents of such report, or the resale of any such report or the contents thereof which is not imposed upon the sale of such report or information to credit bureau members of ACB of A; . . .

While I am mindful that this consent decree is not determinative of the issues in this case, I do feel that it is relevant to certain of the issues as I shall discuss below.

Section 1 of the Sherman Act states, *inter alia,* that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . . . .

Although this section taken literally would seem to proscribe *all* restraints on trade, courts have construed it as prohibiting only those contracts, combinations, or conspiracies which "unreasonably" restrain competition. See Chicago Board of Trade v. United States, 246 U. S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918); Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). In Lewis v. Pennington, 400 F.2d 806, 810 (6th Cir. 1968), the Court of Appeals aptly stated how such a standard was to be applied in individual cases:

> Under this standard, each restraint is evaluated in light of the particular facts of that case, considering the peculiarities of the industry, the conditions in the industry before and after the inception of the restraint, the nature of the restraint and its effect, the problem to which the restraint was directed, and the end or purpose sought by reason of the restraint. The test is whether "the restraint imposed, is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." Board of Trade of City of Chicago v. United States, 246 U.S. 231, [238], 38 S.Ct. 242, 62 L.Ed. 683 (1918).

In the instant case this Court, after a review of the entire record, is still left with factual questions which preclude the Court from making the evaluations contemplated by the Sixth Circuit in the above quotation.

These questions, *inter alia,* may be briefly summarized as follows:

1. Is plaintiff foreclosed from obtaining raw consumer data regarding Lazarus consumers?

2. If plaintiff is foreclosed, is access to Lazarus' raw data necessary before a would-be competitor of CBC can effectively compete?

Should these questions be answered in the affirmative, then plaintiff would establish a colorable claim under Section 1 of the Sherman Act. *See, generally,* Elder-Beerman Stores Corp. v. Federated Dept. Stores, Inc., 459 F.2d 138 (6th Cir. 1972).

With regard to the first factual question it is undisputed that plaintiff cannot obtain consumer credit information from Lazarus. It is equally undisputed that the computer print-outs of Lazarus' customer accounts cannot be obtained by plaintiff from CBC. But the record is murky as to whether credit data is obtainable by plaintiff from CBC concerning individual consumers, who apply for credit, list Lazarus as a reference, and whose applications are then referred to plaintiff for a report of their creditworthiness. In depositions taken of various employees of plaintiff, these employees indicate that since the information could not be obtained from Lazarus, the only way to get it was to go through the applicant himself. The applicant would personally contact Lazarus, request his own credit standing, which Lazarus is obliged to provide by the Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq., and than relay the information to plaintiff. See Deposition of Linda Hatmaker, pp. 59–60; Deposition of Karen Hartmann, pp. 26, 67–68. Such a procedure presumably would not allow the plaintiff to operate effectively in the business of determining credit worthiness of consumer applicants. The record is clear that plaintiff demanded, and CBC refused to relinquish, the computer print-out sheets which Lazarus supplies CBC. But the record does not indicate whether plaintiff could obtain information on individual consumers from defendant CBC or whether this too was precluded by the loan arrangement between CBC and Lazarus. According to the terms of the consent decree mentioned above, members of Associated Credit Bureaus of America are precluded from having exclusive access to raw credit data since they must furnish such information on request of other reputa-

ble credit bureaus. Whether plaintiff made such requests of CBC and whether CBC was precluded from furnishing the information because of its loan arrangement with Federated is not apparent from the record.

If plaintiff is being denied all means of procuring information concerning Lazarus customer accounts it is necessary to ascertain the effect of such foreclosure. I am unable to determine on the record presented whether access to Lazarus' raw data is necessary in order for a would-be competitor of CBC to compete effectively. Plaintiff in its Complaint alleges that Lazarus is the leading and dominant credit grantor in Franklin County. While this is denied generally in Federated's Answer, the record is insufficient to indicate exactly what position Lazarus does occupy with regard to the granting of credit in the Columbus area. Yet such evidence is crucial in determining whether plaintiff's being denied access to Lazarus' raw consumer credit data is tantamount to its being foreclosed from the credit reporting business in Franklin County.

Moreover, it appears to the Court that evidence on these factual issues will also aid in determining the merits of plaintiff's claim under Section 2 of the Sherman Act. Monopoly power alone is insufficient to establish a violation under this section. Section 2 prohibits *monopolization,* (which consists of both monopoly power and general intent to monopolize) as well as an attempt or conspiracy to monopolize (both of which require specific intent). On the record presented I am unable to determine not only whether CBC has a dominant position in the credit reporting business in Franklin County but also whether such dominance has been used by it, alone or in combination with Federated, to monopolize the credit reporting business. If plaintiff can show that a CBC monopoly has been achieved through a combination of CBC and Federated pursuant to their loan arrangement, it will have

provided sufficient facts from which a reasonable inference may be drawn that the necessary intent to violate Section 2 is present. The necessary intent may be inferred from the fact of combination or conspiracy which results in monopoly. See American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). In the face of a failure to show a monopoly, plaintiff is relegated, as concerns its Section 2 claims, to the attempt to monopolize and conspiracy to monopolize elements of the statute, both of which require a proof of defendants' specific intent to accomplish an unlawful act.

Federated has presented affidavits which aver that its specific intent in entering into the arrangement with CBC was lawful. Rule 56(e) places a burden upon plaintiff to answer this assertion with specific facts showing that there is a genuine issue for trial. Plaintiff appears to argue that the September 5, 1972, Carleson memorandum is evidence that Federated had unlawful intent. The evidence of the actual specific intent of Federated is obviously within the control of Federated, not plaintiff. Here the words of the Supreme Court are relevant:

> We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice." Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

The defendant Federated is not entitled to summary judgment upon the restraint of trade elements of plaintiff's case, for

the reasons stated earlier in this opinion. The Court today decides that in view of the similarity of the facts needed to establish the restraint of trade, monopolization, attempt to monopolize and conspiracy to monopolize charges in this case, and in view of the fact that evidence of Federated's specific intent is within its, not plaintiff's, control, plaintiff has met its Rule 56(e) burden and should be permitted to its day in court, when it will have opportunity to examine Federated's agents as on cross-examination as suggested by the Supreme Court in the quotation above.